*State Emblem of Ukraine*

Public Prosecution of Ukraine

# GENERAL PROSECUTOR'S OFFICE OF UKRAINE

01601, Kyiv-11, Riznytska Str. 13/15     fax: (044) 290-28-51

_20_. 05 2005   No 14/2-27967-05

To:
Department of Justice
of the United States of America
Rex Young
Senior Counsel
Office of International Affairs
Suite 800
1301 New York Ave., N. W.
Washington, D.C. 20005

**Dear Sirs,**

The General Prosecutor's Office of Ukraine expresses the highest consideration to the Department of Justice of the United States of America and in conformity with the provisions of the Agreement between Ukraine and the United States of America *On Mutual Legal Assistance in Criminal Matters*, dated 22.07.1998, approaches with the applications for legal assistance.

The Investigation Division of the Tax Militia of the State Tax Inspection in Poltava town is investigating a criminal matter No 05218004 initiated by the elements of crime, envisaged by section 3 of Article 212 of the Criminal Code of Ukraine. The circumstances of this crime are stated in the attached application.

The need of carrying out of a number of proceedings in the territory of the United States of America has arisen in the course of investigation of the circumstances of the completed offence.

Sending the commission of the Investigation Division of the Tax Militia of the State Tax Inspection in Poltava for legal assistance in the above criminal matter, the General Prosecutor's Office of Ukraine makes a request to organize its execution and to send materials received to our reference number 14/2-27967-05.

The General Prosecutor's Office of Ukraine assures that materials received will be used by the Ukrainian law-enforcement bodies only within the limits of the criminal matter and its consideration at court.

Enclosure: on 44 pages.

Yours respectfully,
**Head of**
**International-Law Department**                                  S.F. Kravchuk

By: Mayorova A.V.
Tel.: (044) 288-95-58

Translator of the General Prosecutor's Office of Ukraine         R.V. Mykytenko

United States Department of Justice international affairs criminal-judicious subdivision

Concerning: Appeal for a legal assistance in a criminal case, that was instituted to the fact of deliberate evading of taxes by legal persons of Joint Stock Company "Poltava mobile mechanized column # 64" (Hereinafter "PMC-64").

    Ukraine appeals to render legal assistance by the competent organs of the United States of America according to the Treaty between Ukraine and the United States of America about mutual legal assistance in criminal cases, signed on July 22, 1998 in Kiev.
    The tax militia investigation department of the State Tax Inspection in Poltava, State Tax Administration of Ukraine is carrying out an investigation as for the "PMC-64" legal people activity, that are suspected in deliberate evading from tax payment, committed by the showing in tax records of the above said company export of the "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions". in the quantity of 672 pieces to the sum of 255360 USD.

    Investigator needs following information:

    1. Respective documents of the United States' Tax Service about the registration of the company "Gilpatrick Trade Company" (Suite 606, 1220 N Market str. Wilmington, DE 19801 USA ▓▓▓▓▓▓▓▓▓▓) and its activity. To make a seizure of the documents, that deal with financial and business relationships of the company "Gilpatrick Trade Company" with the private company "Detroit" (hereinafter PC "Detroit" (Ukraine, Donetsk) or with the JSC "PMC-64" (Ukraine, Poltava). To make a seizure of documents that show the financial and business relationships of "Gilpatrick Trade Company" with "Internationales Technishes Handelshaus GmbH", Duisburg, Germany and with "Sunset LLC", USA. Investigator also needs to carry out an interrogation of William Curran, director of "Gilpatrick Trade Company" as for financial and business relationships with PC "Detroit" (Ukraine, Donetsk), JSC "PMC-64" (Ukraine, Poltava), "Internationales Technishes Handelshaus GmbH", Duisburg, Germany, and "Sunset LLC", USA.
    2. Taking into account that the investigation before the trial in this criminal case has to be finished in 2 months, the tax militia investigation department of the State Tax Inspection asks to render urgent legal assistance in fulfillment of this appeal.
    3. The tax militia investigation department of the State Tax Inspection also asks respective organs of USA to observe confidentiality concerning the contents of the appeal, to the extents that it possible according to the US legislation. The disclosure of the information concerning this appeal can complicate the proving of blame in the committing of crime of the JSK "PMC-64" legal people.
    In turn, the tax militia investigation department of the Poltava State Tax Inspection assures the US competent organs that the received data and information will be used only for investigation of this criminal case and it's consideration by the court. This appeal does not have any military or political purposes.

2

### The circumstances of the committed crime.

The Joint Stock Company "Poltava mobile mechanized column #64" (Hereinafter "PMC-64") concerning the officials of which the criminal case was instituted is a building company. The main types of activities this company carries out is building and reconstruction of fixtures. While selling of built fixtures this company, according to the Ukrainian tax legislation has to pay the tax obligations in value added tax (Herinafter "VAT").

The company officials, with the purpose of evading VAT, in June, 23 2003 bought from "Pechora Tur", Ltd (Kyiv, Ukraine) "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" in the quantity of 672 items to the total sum 1,620,864.00 Ukrainian hryvnyas. This commodity is not used in building industry that shows that there was no purpose to use it in financial and business activity of JSC "PMC-64". Nevertheless the legal people of the company showed this business operation in tax records and increased the tax credit in VAT to the sum of 270,144.00 hrn., that caused the groundless minimizing of taxes to be come through the State budget of Ukraine. According to the Law of Ukraine "About the value added tax" the tax credit in VAT is a sum, to which the tax payer has the right to cut down the tax obligation in VAT.

According to the current tax legislation of Ukraine while carrying out the sale abroad the company-exporter does not have to pay the VAT. So, having received the tax credit in VAT from the buying of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", the officials of JSC "PMC-64" decided to evade from payment of tax obligations in VAT that would arise if they sell the commodity in the territory of Ukraine.

Thus, the legal people of JSC "PMC-64" on 23 of June, 2003, having the purpose not to pay the tax obligations in VAT, concluded the commission contract with PC "Detroit", according to which the last received obligation to sell the commodity that is the property of JSC "PMC-64", outside the custom territory of Ukraine.

On 22 of August, 2003 PC "Detroit" to the fulfillment of the above mentioned commission contract gave to JSC "PMC-64" documents, according to which "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" in the quantity of 672 items were sold to "Gilpatrick Trade Company", USA for 255,360.00 USD. Among the documents were:
- contract #23 dated July, 17, 2003 concerning the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" in the quantity of 672 items by PC "Detroit" to "Gilpatrick Trade Company", USA.;
- additional contract #1 dated July, 17,2003 to the above mentioned contract, according to which the receiver of the above mentioned "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" will be "ITN Internationales Technishes Handelshaus GmbH", Duisburg, Germany;
- additional contract dated July, 18,2003 to the contract #23 datedJuly,17,2003, according to which the payers to this contract can be two companies: "Roldex Invest LLC.AG", USA or "Sunset LLC", USA.

On the basis on the above mentioned and other documents the JSC "PMC-64" officials showed in tax records the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" as the export that in turn allowed them not to pay the VAT to the state budget of Ukraine. This corresponded to the criminal intentions of JSC "PMC-64" officials. Thus, the JSC "PMC-64" officials deliberately did not pay the VAT to the state budget of Ukraine in the sum of 271,891.00 hrn., because while concluding the contract about the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", they had the purpose to minimize the taxes, instead of making a business operation. This can be proved by the following:
1. This kind of product can not be used in building industry, that is the main kind of JSC "PMC-64" business activity. So, while buying the product, the JSC "PMC-64" officials only aim was to get tax advantage.
2. "Diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", the purchase of which was shown as the tax credit in VAT, according to the expertise made,

does not correspond to the technical characteristics of this kind of product. This fact shows the formal business operation.

3. The price of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" is 2.66 hrn. for the item, but JSC "PMC-64" legal people bought them at 2,412.00 hrn. for the item that is 900 times more expensive. This fact shows the absence of the purpose to carry out real financial and business relationships and shows that the activity of JSC "PMC-64" officials was directed to artificial increase of the tax credit in VAT.

4. According to the documents, on the basis of which the JSC "PMC-64" officials did not pay the tax obligations in VAT during the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", the buyer of the commodity is "Gilpatrick Trade Company", USA. But according to the available information, the company "Gilpatrick Trade Company" does not carry out any activity in USA, does not make any tax reports in USA, that makes doubtful the reality of financial and business relations between this company and JSC "PMC-64" and PC "Detroit".

5. According to the content of the documents, the receiver of the above mentioned commodity is "ITH Internationales Tachnishes Handelshaus GmbH", Duisburg, Germany. According to the information, received from National Central Bureau of Interpol of Ukraine the company "Internationales Tachnishes Handelshaus GmbH" has never been registered in Duisburg, Germany. These circumstances prove that the JSC "PMC-64" officials did not pay VAT groundless.

Beside that, during the investigation it has been found out that with the purpose to create visibility of making payment for the commodity, there was created the following criminal scheme: 1) "Gastor" Ltd (Zaporizhzhya, Ukraine) gets credit from JSC "Brokbiznesbank", (Ukraine). 2) "Gastor" Ltd pays the received money to "Sunset LLC", USA. 3) The company "Sunset LLC", USA transfers the money to the account that belongs to PC "Detroit" (Ukraine, Donetsk) as the payment for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", that were bought by the company "Gilpatrick Trade Company", USA. 4) PC "Detroit" according to the guarantee contract with JSC "Brokbiznesbank" returns this money to the bank instead of "Gastor" Ltd. 5) PC "Detroit" pays out to JSC "PMC-64" by the money of unknown origin but not by the money received from "Sunset LLC", USA with the purpose of payment "for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions"".

**Criminal Code of Ukraine: Clause 212 – "Evading of taxes, duties, other obligatory payments.**

1. Deliberate evading of tax payment, duties, other obligatory payments, that are included in the tax system, committed by the official person of the company, organization of any form of property or by the person that carries out the business activity without creating of legal entity or by any other person that has to pay them, if these actions resulted in factual non-coming of means to budgets or state funds for specified purposes in considerable amounts,-
to be punished by a fine from three hundred to five hundred of untaxed minimum of personal revenues or by the deprivation of the right to hold certain positions or to carry out certain kinds of activities to the term to three years.

2. The same actions, committed as a result of preliminary agreement or arrangement by a group of people, or if theses actions resulted in factual non-coming of means to budgets or state funds for specified purposes in great amounts, -
to be punished by a fine from five hundred to two thousand of untaxed minimum of personal revenues or by reformatory work to the term to two years, or by limitation of freedom to the term to five years or by the deprivation of the right to hold certain positions or to carry out certain kinds of activities to the term to three years.

3. The actions stipulated in by the part one or two of this clause, committed by the person that was previously judged for evading of taxes, duties, other obligatory payments, or if it resulted in the

4

factual non-coming of means to budgets or state funds for specified purposes in especially great amounts,-
to be punished by imprisonment to the term of five to ten years with deprivation of the right to hold certain positions or to carry out certain kinds of activities to the term to three years with confiscation of property.

4. The person that committed the actions stipulated by the part one or two of this clause is to be freed from criminal responsibility if he (she) paid taxes, duties (obligatory payments) and compensated the damage caused to the State by the tax non-payment (financial sanctions, fine) before taking to court.

Note. The considerable amount is to be understood as the sum of taxes, duties, other obligatory payments that one thousand times or more exceed the stipulated by legislation untaxed minimum of personal revenues, the great amount is to be understood as the sum of taxes, duties, other obligatory payments that three thousand times or more exceed the stipulated by legislation untaxed minimum of personal revenues, the especially great amount is to be understood as the sum of taxes, duties, other obligatory payments that five thousand times or more exceed the stipulated by legislation untaxed minimum of personal revenues.

Thus, the "PMC-64" officials violated this law, because, having bought "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", increased the tax credit in VAT. Afterwards, having not sold the commodity outside the custom territory of Ukraine, groundless used the tax privilege of Ukrainian tax legislation as for non-payment of VAT during the export of goods. So, the JSC "PMC-64" officials deliberately evaded of taxes to State budget of Ukraine in especially great amounts, that is 271,891.00 Ukrainian hryvnyas.

**Necessary assistance.**

The investigator suspects that the JSC "PMC-64" officials, having bought "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" at especially high price, using the tax privilege of Ukrainian tax legislation increased the tax credit in VAT. The JSC "PMC-64" officials showed in tax records export of the above-mentioned commodity to "Gilpatrick Trade Company", USA that did not take place. The purpose of these actions was not to pay tax obligations in VAT.

**Necessary documents.**

1. We would like to receive all information as for the registration of "Gilpatrick Trade Company", USA (according to available information is registered in Delaware) in the Tax Organs of USA. This information will make it possible to make a deduction as for legitimacy of concluded contracts on behalf of "Gilpatrick Trade Company" and to find out if really the person William Curran (in the contract written in Russian – Вильям Курран) is a director of this company and has the right to conclude contracts on behalf of this company.

2. We ask to carry out seizure of documents (originals) as for the financial and business relations between "Gilpatrick Trade Company" and JSC "PMC-64" (Poltava, Ukraine), CHP "Detroit" (Donetsk, Ukraine). The analysis of these documents will make it possible to make a deduction as for legitimacy of the data, received from JSC "PMC-64" and CHP "Detroit" as for relations with "Gilpatrick Trade Company". We bind to return the original documents after necessary investigative actions are over.

3. We ask to give all the information as for registration of the company "Sunset LLC" in the Tax organs of USA. This information will make it possible to make a deduction as for the possibility of relations of this company with "Gilpatrick Trade Company".

4. We ask to carry out a seizure of documents (originals) as for the financial and business relations between "Gilpatrick Trade Company" and the company "Sunset LLC". The analysis of these documents will disprove or prove the possibility of payment from "Sunset LLC" to CHP

5

"Detroit" for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" that were bought by the company "Gilpatrick Trade Company".

5. We ask to carry out a seizure of documents (copies) as for the financial and business relations between "Gilpatrick Trade Company" and the company "ITH Internationales Technishes Handelshaus GmbH", Duisburg, Germany. The analysis of these documents will disprove of prove the possibility of receipt by "ITH Internationales Technishes Handelshaus GmbH", Duisburg, Germany of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" on commission from "Gilpatrick Trade Company".

6. We ask to carry out a seizure of documents (copies) as for the financial and business relations between the company "Sunset LLC" and "Gastor" Ltd (Zaporizhzhya, Ukraine) (analysis of the above mentioned documents will prove the possibility of creating the fictitious scheme of payments for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions").

7. To find out and interrogate as a witness the director of "Gilpatrick Trade Company" (according to available documents of the criminal case the director can be a person by name William Curran (in the contract written in Russian – Вильям Курран) at the following questions:
   - What kinds of activity does "Gilpatrick Trade Company" carry out ?;
   - Is he acquainted with Kudryavtseva Marina Oleksiyivna (Кудрявцева Марина Олексіївна), if yes when and under what circumstances did he become acquainted ?;
   - Does he know that Kudryavtseva M.O. is a director of CHP "Detroit" (Donetsk, Ukraine) ?;
   - Did the company "Gilpatrick Trade Company" conclude the contract as for the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" in the quantity of 672 items to the total sum 255,360.00 Ukrainian hryvnyas, if yes, when exactly was this contract concluded?

7.2. Where was the contract concluded – the full address?

7.3. Who was present while the contract was being concluded – name, surname, patronymic, sex, what is he (she), maybe gave to each other addresses, telephone numbers? To describe the general appearance of the people that were present;

7.4. Who proposed to conclude this contract? If it was CHP "Detroit", how did it's representatives find the buyer – "Gilpatrick Trade Company" ? Were there any financial or business relations between these companies before? Was this contract fulfilled via the intermediary, if yes, who was the intermediary (name, full address, telephone numbers, names, surnames and patronymic of the people that were representatives of the intermediary) ?;

7.5. If the initiator of the above mentioned contract was "Gilpatrick Trade Company" how did it contact with CHP "Detroit" – telephone number, email, or otherwise?

7.6. According to the contract #23 dated July, 17, 2003, "Gilpatrick Trade Company" bought from CHP "Detroit" "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" to the total sum 255,360.00 Ukrainian hryvnyas. With what purpose did "Gilpatrick Trade Company" buy this commodity ?;

7.7. Did representatives of "Gilpatrick Trade Company" carry out the examination of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions", if yes, who exactly, where (full address), in the presence of what people, was the commodity packed, if yes what marks were made on the package (producer, quantity, net weight) ?;

7.8. What circumstances caused the conclusion of appendix #1 to the contract #23 dated July, 17,2003, according to which the receiver of the commodity is to be "ITH Internationales Technishes Handelshaus GmbH", Duisburg, Germany? Who proposed to conclude this appendix to the contract ? Why while the main contract #23 dated July, 17, 2003 was being signed it was stipulated that receiver of the commodity is to be "Gilpatrick Trade Company" and the same day, that's July, 17, 2003 arose some kind of necessity to appoint another receiver – "ITH Internationales Technishes Handelshaus GmbH", Duisburg, Germany?

7.9. Did the company "ITH Internationales Technishes Handelshaus GmbH", Duisburg, Germany receive "diaphragm of ion-selective electrode for determining of high-charged phosphate-

6

ions", if yes, when where exactly, in what amount ? How the above mentioned commodity was passed to "Gilpatrick Trade Company" ? Was it really received by these companies?

7.10. Was the company "Sunset LLC" really the payer to the contract #23 dated July, 17, 2003 ? Does the "Gilpatrick Trade Company" director know about the payment to CHP "Detroit" for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions": when, bank of the buyer, bank of the receiver ? Why the company "Sunset LLC" paid for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" instead of "Gilpatrick Trade Company"?

7.11. Give to director the copy of the letter #16/09 dated September, 16, 2003 that is an appendix to the appeal. Was the letter really written, why in the rest of documents the name of the company is "Gilpatrick Trade Company", but in this letter it is "Gilpatric Trade Company»? Why the surname of the director in the letter is Куррам (Curram), but in the rest of the documents it is Курран (Curran)?

7.12. Does the "Gilpatrick Trade Company" director confirm or not the existence of financial or business relations with CHP "Detroit" ? If he confirms, so why did he conclude unprofitable contract, where the price was almost one thousand times increased and the product did not have characteristics that could give the possibility to serve it's purpose, terms of the payment – prepayment 100 %, transportation costs – at the expense of the buyer ?

8. To find out and interrogate as a witness "Sunset LLC" director on the following questions:

Did the company "Sunset LLC" really paid to CHP "Detroit", if yes, on what grounds, the purpose of the payment, on whose commission, when, the name of the bank and account number, in what amount ?

Does the company "Sunset LLC" have accounts in Latvia, if yes, at what banks, account numbers?

Did "Sunset LLC" have financial and business relations with "Gastor" Ltd (Zaporizhzhya, Ukraine), if yes, what exactly, who was the representative of "Gastor" Ltd, wich documents were made, what goods (services) were subjects of these relations, if it was a commodity, what exactly (quantity, price characteristics), where did the transfer take place, who was present ? If subject of relations was a service, what kind of service, where was it rendered, who rendered it ? How were payments for goods or services made: bank requisites, amounts, purpose of the payments, when exactly were they made ?

The interrogation of the above mentioned witnesses will prove or disprove the possibility that this contract as for the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" was really made.

9. We also ask to give the full information as for the price and demand for "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions" on the territory of the USA. The analysis of this information is important to estimate expediency of the sale of "diaphragm of ion-selective electrode for determining of high-charged phosphate-ions".

## Procedure of the appeal fulfillment.

As for the seizure of the documents from "Gilpatrick Trade Company" we ask that the representative of the US competent organs make and take into consideration the following.

1. The seizure is carried out when there are exact information that documents or articles that are important to the case are there in some place or at some person.

2. The seizure is made on the basis of resolution made by investigator (appendix to this appeal).

3. Officials or citizens don't have the right to refuse from presenting or giving of documents or there copies or other articles, that are demanded by investigator during the seizure.

4. Seizure is to be carried out in the day-time (except force major occasions).

5. Seizure is to be carried out in the presence of two witnesses and the person that occupies the room (premises), in case of absence – representative of owner of the room (premises) or local deputy.

7

6. Seizure in premises that belong to companies or organizations is carried out in the presence of representatives of the company or organization.

7. It is necessary to explain to witnesses their right to be present at all actions of investigator and make statements as for these actions; these statements have to be entered in the protocol.

8. Before the seizure investigator has to present the resolution to people that occupy the apartment (premises) or to the representative of the company or organization where the seizure is carried out, and proposes to give stated in the resolution documents or articles. In case of refusal to fulfill the investigator' demands it has to be made a compulsory seizure. If the people that occupy the apartment (premises) are absent, the resolution is to be presented to representative of owner of the room (premises) or local deputy and is to be carried out in their presence.

9. Investigator has the right to forbid leaving the room (place where the seizure is made) to the people that are present during the seizure or to the people that came in during the seizure. The investigator also has the right to forbid to above-mentioned people to speak to each other or to other people during the seizure.

10. According to the results of the seizure the investigator is to make a protocol.

11. In necessary occasions investigator has the right to invite policemen or other specialists to take part in the seizure.

**While carrying out the necessary interrogations and preparing the results of interrogations we ask the representative of US competent organ to take into account the following:**

1. To begin with the establishing the full name date and place of birth, current address.

2. The witness is to be informed that he (she) is not obliged to give the answers to the questions that blame him in something (incriminate him in something). The witness has to be informed that he can be put on trial (called to account) for the untrue answers to all other questions

3. To answer the questions to which is necessary to get answers.

4. To draw up the above said information in the form of witness interrogation protocol, where to write down the following: 1) place and date of making the protocol, time of beginning and time of finishing; 2) in the protocol it is to be indicated that the witness is informed that he (she) is not obliged to give the answers to the questions that blame him in something (incriminate him in something). The witness has to be informed that he can be put on trial (called to account) for the untrue answers to all other questions; 3) the questions asked and answers to them.

5. After that: 1) To read to the witness questions and answers that were written; or 2) to propose to the witness to familiarize personally with the protocol.

6. To indicate in the protocol if the representative of the US competent organ read questions and answers to witness or if the witness personally familiarized with the protocol.

7. Every sheet of the protocol has to be signed by the person that gave depositions as a witness. After that the protocol has to be signed by representative of US competent organ that carried out an interrogation.

**Contact person.**

In case of arising any questions concerning this appeal or it's fulfillment, please contact with chief investigator of Tax militia investigation department of the State Tax Inspection in Poltava, Ukraine on the phone number 380-532-595759, fax 380-532-595559.

The received documents please send to: Ukraine, 36001, Poltava, Frunze Str., 155.

8

Appendix:
1. Resolution about the seizure of the "Gilpatrick Trade Company"(USA) documents as for relations with CHP "Detroit" (Donetsk, Ukraine) and JSC "PMC-64" (Poltava, Ukraine) on 1 sheet.
2. Resolution about the seizure of the "Gilpatrick Trade Company" (USA) documents as for relations with "Sunset LLC" (USA) on 1 sheet.
3. Resolution about the seizure of the "Gilpatrick Trade Company" (USA) documents as for relations with the company "ITH Internationales Technishes Handelshaus GmbH", Duisburg, Germany on 1 sheet.
4. Resolution about the seizure of the "Sunset LLC" documents as for relations with "Gastor" Ltd (Zaporizhzhya, Ukraine) on 1 sheet.
5. Copies of the documents as for the contract between CHP "Detroit" (Donetsk, Ukraine) and "Gilpatrick Trade Company" (USA) on 6 sheets.
6. Extraction from the Criminal code of Ukraine and Criminal Procedure code of Ukraine on 3 sheets.

Chief investigator of the tax militia
investigation subdivision of Poltava
State tax inspection
chief lieutenant of the tax militia _____ Pishchenko O.I.


The translation of the appeal for the legal assistance in a criminal case is made by representative of tax militia department of struggle with laundering of revenues achieved in criminal way of State tax administration in Poltava region Teneta Taras Uriyovych.


Signature of tax militia
of State tax administration
in Poltava region representative _____ T.U. Teneta


The signature of tax militia of State tax administration in Poltava region representative is witnessed:

Deputy head of State tax administration
in Poltava region – head of the tax militia
investigation department
colonel of the tax militia _____ A.O. Gnidash

